[File No. 6386.]

THOS. FIGENSKAU, Sole Trader, Doing Business Under the Firm Name and Style Figenskau Coal Company, Petitioner, v. L. H. McCOY, Motor Vehicle Registrar, of the State of North Dakota, Ben C. Larkin, C. W. McDonnell and E. O. Cart, as the Board of Railroad Commissioners of the State of North Dakota, Respondents.

(265 N. W. 259.)

Opinion filed February 8, 1936.

*Thomas J. Burke,* for appellant.

*P. O. Salhre,* Attorney General, and *J. A. Heder,* Assistant Attorney General, for respondents.

MORRIS, J. The appellant is an "auto transportation company" as defined by chapter 179, Session Laws, N. D., 1935, operating a motor truck in "commercial freighting" as defined by chapter 181, Session

Laws, N. D., 1935. He hauls lignite coal in his truck from his mine to customers and includes all or part of the cost of transportation in the delivered price. He has not complied with the orders of the North Dakota Railroad Commission purporting to be made pursuant to chapter 179 requiring the payment of a $15.00 registration fee for his truck, and has not filed evidence that he has secured public liability insurance as required by the Commission. He has not paid a fee of $25.00 required for commercial freighting under chapter 181. The Motor Vehicle Registrar canceled his motor vehicle license, after due hearing for failure to comply with said rules and regulations and for failure to comply with chapter 181. The appellant then obtained a writ of certiorari from the district court of Burleigh county. Upon the hearing held upon the return of the writ, the district court entered its judgment sustaining the order of the Motor Vehicle Registrar canceling such registration. This appeal is from such judgment.

Appellant's first contention is that "chapter 179, Session Laws of North Dakota for 1935, is without force and effect for the reason that it amends or attempts to amend a section of a statute which was repealed by chapter 162, Session Laws of 1933." Chapter 179, Session Laws for 1935 purports to amend and re-enact Subdivision (d) of section 1 of chapter 188 of the Session Laws of 1931. The subdivision so amended and re-enacted defines the term "auto transportation company," but contains no administrative provisions. It is a part of an act, extensive in scope, which gave the Board of Railroad Commissioners of the state of North Dakota supervisory and regulatory power over auto transportation companies as therein defined, under rules and standards set up by other sections. The act also prohibited the operation of motor vehicles by such companies without a license from the commission in the form of a certificate of convenience and necessity. It further provided for certain regulatory fees to be paid to the commission and for appeals from the orders of the commission to the District Court.

Chapter 164, Session Laws, N. D., 1933, states that: "It is hereby declared to be the purpose and policy of the legislature in enacting this law to confer upon the commission the power and authority and to make it its duty to supervise and regulate the transportation of persons

and property by motor vehicle upon or over the public highways of this state in all matters, whether specifically mentioned herein or not, so as to: (1) relieve the existing and future undue burdens of the highways arising by reason of the use of the highway by motor vehicles for hire; (2) protect the safety and welfare of the traveling and shipping public in their use of the highways; (3) carefully preserve, foster and regulate transportation and permit the coordination of transportation facilities, and to actively enforce the provisions of this act."

From the foregoing legislative declaration, it appears that the legislature intended to cover a field of transportation which includes the entire sphere of the 1931 act. A comparison of the two laws discloses that such intention was effectively carried out. The 1931 act regulates common carriers operating over public highways in this state. Article two of the 1933 act operates in exactly the same field. It covers the same general class of carriers; regulation thereof is conferred upon the same Board, which is authorized to issue the same type of permissive certificates and charge therefor the same fees which go into the same fund. Each act provides for an appeal to the district court. Although it covers the same field and contains many similar provisions, the 1933 act cannot be said to be a confirmation of the former act, for it provides different classifications and different standards under which the regulatory authority of the Board of Railroad Commissioners is exercised.

It is a well settled rule that even though repeals by implication are not favored, nevertheless, where a new statute covers the entire subject matter of a former statute in such a way as to set up a complete plan or course of action pertaining to such subject matter which is inconsistent with that contained in a former statute, the new statute will be held to repeal the old one or at least to supersede it entirely, and the old statute no longer remains in force. Tilton v. Sanbornton, 78 N. H. 389, 100 A. 981; Wood v. Roach, 125 Cal. App. 631, 14 P. (2d) 170; Northern Trust Co. v. Chicago R. Co. 318 Ill. 402, 149 N. E. 422; Smock v. Farmers' Union State Bank, 22 Okla. 825, 98 P. 945.

The 1933 act specifically repeals "All parts of Chapter 188, Session Laws of North Dakota for.1931, inconsistent or in conflict with this

Act." It is plain that the 1933 act covers the entire subject matter of the former statute and sets up a complete regulatory system and course of action thereunder, covering the same field. Clearly the legislature did not intend that the Board of Railroad Commissioners should license carriers as "auto transportation companies" under the 1931 act and should also license the same carriers as "common carriers" or "contract carriers" under the 1933 act. Such duplication would be wholly inconsistent and to the extent of such inconsistency the 1931 act is specifically repealed. When such inconsistent portions are stricken, nothing remains of the 1931 act to which effect can be given, and the repeal of inconsistent portions has the effect of repealing the entire act.

Chapter 179, Session Laws, N. D., 1935, amends and re-enacts subdivision (d) of § 1, of chapter 188, Session Laws of 1931 which defines the term "auto transportation company." As we have pointed out, the 1931 act had been repealed. The amendment and re-enactment of the definition could not and did not revive the other portion of the 1931 act. This leaves the amended definition without any law applying to or supporting it. Standing alone it is ineffective and provides no system of regulation for auto transportation companies. The law of which the definition originally formed a part is dead. Such a law cannot be reanimated by amending and re-enacting a definition contained therein.

The appellant further contends that both chapter 179 and chapter 181 of the Session Laws of 1935 contain exceptions which have the effect of making said acts discriminatory and of denying to the appellant equal protection of the laws, and that for such reasons said chapters are in conflict with § 1 of the Fourteenth Amendment to the Constitution of the United States, and § 20 of the Constitution of the state of North Dakota, and are, therefore, unconstitutional. Since we have held that chapter 179 merely revises and re-enacts a definition contained in a law that had been repealed, we need not consider that act further. Turning our attention to chapter 181, we find that it defines commercial freighting to mean the carriage of things other than passengers for hire, and provides further, "that commercial freighting as defined in this Act shall include any individual, co-partnership, company or corporation, their lessees, trustees, receivers or trustees appoint-

ed by any court whatsoever, operating over the highways of the State in transporting goods, from one point to another for themselves or others where the price of said merchandise at its point of destination includes the cost of transportation or when a separate charge is made for said transportation." This act contains a number of exceptions, some of which it is contended render the act unconstitutional.

The first exemption to be considered provides that commercial freighting "shall not include hauling done for farmers in transporting agricultural products to or from market, nor shall this include any one hauling farm products to or from a railroad station in his farming territory." The motor vehicle registration law of which chapter 181 is a part, requires those engaged in commercial freighting to pay in addition to the usual motor vehicle registration fee a further fee based on load capacity varying from $10.00 for one ton trucks to $250.00 for trucks having a load capacity over five tons. It also states that the fees provided for shall be in lieu of all taxes both state and local and shall be paid into the motor vehicle registration fund which is used chiefly to pay the costs and expenses of the administration of the state highway department and the costs of construction and maintenance of highways.

The state in imposing fees for the use of its highways may classify the users and impose different fees upon different classes, Alward v. Johnson, 282 U. S. 509, 75 L. ed. 496, 51 S. Ct. 273, 75 A.L.R. 9; or may exempt certain classes of users from the payment of any fees, Continental Baking Co. v. Woodring, 286 U. S. 352, 76 L. ed. 1155, 52 S. Ct. 595, 81 A.L.R. 1402; but such differentiation or exemption must not be arbitrary. It must be based upon some reasonable and substantial distinction, and if so based will not constitute discriminatory or class legislation so long as all the members of a class receive the same treatment.

This court in discussing the provisions of the North Dakota Constitution in the case of State ex rel. Dorval v. Hamilton, 20 N. D. 592, 129 N. W. 916, said: "It is doubtless true that, notwithstanding constitutional inhibitions such as those contained in §§ 11 and 20, the legislature may provide a certain classification of citizens to be differently affected by the same general rule. The limitation imposed upon

legislation of this character is, however, that any classification provided as the basis for distinctive or special operation of the law must be natural, not artificial. 'It must stand on some reason having regard to the character of the legislation.' Edmonds v. Herbrandson, 2 N. D. 270, 50 N. W. 970, 14 L.R.A. 725. 'It must rest on some difference which has a reasonable and just relation to the act in respect to which the classification is proposed.' 'It is not necessary that a law shall operate upon all alike, but . . . it must operate alike upon all who are in like situation. The law need not have a universal operation, but it must be uniform. Proper classification is permitted, but arbitrary and unreasonable discrimination is forbidden.' Beleal v. Northern P. R. Co. 15 N. D. 318, 108 N. W. 33, 11 Ann. Cas. 921. It must 'rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 155, 41 L. ed. 668, 17 S. Ct. 255; Powers Elevator Co. v. Pottner, 16 N. D. 359, 113 N. W. 703."

The appellant urges that the statute here considered is unconstitutional when measured by the rule laid down in the case of Smith v. Cahoon, 283 U. S. 553, 75 L. ed. 1264, 51 S. Ct. 582. In that case the United States Supreme Court considered a statute of the state of Florida which required motor carriers for hire to obtain certificates of public convenience and necessity from the Railroad Commission, and to file a public liability insurance policy or bond. The act further authorized certain regulations by the Railroad Commission. The Florida act contains certain exemptions, among them being "corporations or persons engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and salt fish and oysters and shrimp from the point of production to the assembling or shipping point enroute to primary market, or to motor vehicles used exclusively in transporting or delivering dairy products. . . ."

In discussing this exemption, the court said, "But the constitutional guaranty of equal protection of the laws is interposed against discriminations that are entirely arbitrary. In determining what is within the range of discretion and what is arbitrary, regard must be had to the particular subject of the State's action. In the present instance,

the regulation as to the giving of a bond or insurance policy to protect the public generally, in order to be sustained, must be deemed to relate to the public safety. This is a matter of grave concern as the highways become increasingly crowded with motor vehicles, and we entertain no doubt of the power of the State to insist upon suitable protection for the public against injuries through the operations on its highways of carriers for hire, whether they are common carriers or private carriers. But in establishing such a regulation, there does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary and constituted a violation of the appellant's constitutional right. 'Such a classification is not based on anything having relation to the purpose for which it is made.' Air-Way Electric Appliance Corp. v. Day, 266 U. S. 71, 85, 69 L. ed. 169, 177, 45 S. Ct. 12; Connolly v. Union Sewer Pipe Co. 184 U. S. 540, 563, 564, 46 L. ed. 679, 691, 692, 22 S. Ct. 431; Southern R. Co. v. Greene, 216 U. S. 400, 417, 54 L. ed. 536, 541, 30 S. Ct. 287, 17 Ann. Cas. 1247; Truax v. Corrigan, 257 U. S. 312, 332, 333, 66 L. ed. 254, 263, 42 S. Ct. 124, 27 A.L.R. 375; Louisville Gas & E. Co. v. Coleman, 277 U. S. 32, 37, 72 L. ed. 770, 773, 48 S. Ct. 423."

The question of discrimination in that case is determined upon the proposition that the Florida statute is a regulatory and public safety measure. It is clear that when considered from the standpoint of public safety a motor truck using the highways for hire affords the same hazards to the public whether it hauls wheat and potatoes, or whether it hauls furniture or fuel, and where the purpose of the act is the promotion of public safety, an exemption based upon the hauling of agricultural products does not constitute a reasonable classification. In the case of Prouty v. Coyne (D. C.) 55 F. (2d) 289, it was claimed that a South Dakota statute was unconstitutional because of an exemp-

tion which excluded from the definition of trailers a farm wagon of not to exceed two tons capacity used as a trailer to convey agricultural products by or for the producer thereof. The statute imposed a fee for the use of the highways and in sustaining its constitutionality the court draws the distinction between statutes relating to public safety such as that considered in Smith v. Cahoon, supra, and those imposing excise taxes.

Chapter 161, Session Laws, N. D., 1933, as amended by chapter 181, Session Laws, N. D., 1935, does not deal with public safety but prescribes fees for the use of the highways. Whether or not the exemptions in chapter 181 come within permissible classifications must be considered with relation to the purpose of the act.

In the case of Continental Baking Company v. Woodring, supra, the Supreme Court of the United States dealt with a statute of the state of Kansas which regulated and taxed various types of carriers including "private motor carriers of property" and which exempted "transportation of live stock and farm products to market by the owner thereof or supplies for his own use in his own motor vehicle." Under that statute the tax and license fees above the expense of administration go to the highway fund of the state for the maintenance and construction of highways. In sustaining the constitutionality of the act it was said:

"The court found a practical difference between the case of the appellants 'who operate fleets of trucks in the conduct of their business and who use the highways daily in the delivery of their products to their customers,' and that of 'a farmer who hauls his wheat or livestock to town once or twice a year.' The legislature in making its classification was entitled to consider frequency and character of use and to adapt its regulations to the classes of operations, which by reason of their habitual and constant use of the highways brought about the conditions making regulation imperative and created the necessity for the imposition of a tax for maintenance and reconstruction."

The exception in the North Dakota statute which we are considering is broader in scope than that involved in the above case, but it is nevertheless based upon a sufficiently clear and reasonable classification. Agriculture is a basic industry of the state, and is carried on in all sections of the state. The unit of production is the individual farm

which in most instances is not reached by the primary system of highways and in many cases not even by slightly improved public roads. The legislature may have considered that those carriers hauling agricultural products for farmers should be encouraged to render adequate transportation service to agriculture by exempting them from the payment of the commercial transportation fee.

It is a matter of common knowledge that under the present transportation and marketing system the cost of transportation of agricultural products from the farm to the market, or to the railway station usually falls upon the farmer. He has no way of including the cost of transportation in the price which he receives for his products and thus passing it on to the purchaser. The cost of transportation is one of the handicaps of the farming industry in this state. The legislature may have reasonably decided that since the fee here considered adds to the cost of transportation between farm and market or at least between the farm and the railroad station, it should not impose a further transportation burden upon agricultural products. When considered in this light, the exemption is based upon a reasonable and distinguishable classification and is not in conflict with the provisions of either the state or Federal Constitutions. Nance v. Harrison, 176 Ga. 674, 169 S. E. 22; Aero Mayflower Transit Co. v. Georgia Pub. Serv. Commission, 179 Ga. 431, 176 S. E. 487, 295 U. S. 285, 79 L. ed. 1439, 55 S. Ct. 709; State ex rel. Wisconsin Allied Truck Owners' Asso. v. Public Serv. Commission, 207 Wis. 664, 242 N. W. 668. See also State v. LeFebvre, 174 Minn. 248, 219 N. W. 167.

The next exemption to be considered provides: "This act shall not apply to retailers engaged in delivering only gas and gas products from the bulk station directly to the farmer." No reasonable distinction can be made between the retailer engaged in delivering gas and gas products to the farmer directly from a bulk station and a retailer who delivers the same products from elsewhere. No such distinction can be made between a retailer who delivers such products from a bulk station and someone other than a retailer who delivers such products from a bulk station. There is no reasonable distinction between a retailer who delivers such products from a bulk station to a farmer and a retailer who delivers the same products over the same roads for the

same use or purpose to one who is not a farmer. There appears to be no distinction between a retailer delivering gas and gas products to a farmer and another retailer delivering household necessaries, clothing or lignite coal. The classification set up by this exemption is purely arbitrary.

The last exemption excludes from the definition of commercial freighting "farmers hauling lignite coal regardless of the distance hauled, provided such hauling is done for other farmers and in exchange for work and not for cash." This exemption also creates a discriminatory and unconstitutional classification. One farmer who hauls lignite coal for gain, in the form of work, should not be classified differently from another farmer who hauls lignite coal for gain, in the. form of cash. Such an attempted distinction is arbitrary. There appears to be no reasonable distinction between the farmer who hauls lignite coal in exchange for work and someone not a farmer who might do the same thing. This exemption discriminates against the appellant who must pay a fee for using the highways in hauling lignite coal for compensation, while no fee is required from those favored by the exemption. The fact that a person is a farmer does not entitle him to a favored classification as a hauler of coal.

The discriminatory classifications contained in chapter 181, Session Laws, N. D., 1935, render it violative of the guaranty of equal protection of the laws contained in the Fourteenth Amendment to the Federal Constitution, and also violative of Section Twenty of the Constitution of the state of North Dakota, which provides: "No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privilege or immunities which upon the same terms shall not be granted to all citizens."

Since chapter 181 is unconstitutional, subdivision (e) of § 1 of chapter 161, Session Laws, N. D., 1933, remains in full force and effect. It follows, therefore, that the Motor Vehicle Registrar erred in canceling appellant's license and appellant is entitled to the relief demanded. The judgment of the district court is reversed and the case is remanded for further proceedings in conformity with this opinion.

304

NUESSLE, BURR and CHRISTIANSON, JJ., and HOLT; Dist. J., concur.

Mr. Chief Justice BURKE, deeming himself disqualified, did not participate, Hon. DANIEL B. HOLT, Judge of First Judicial District, sitting in his stead.