C. R. VERRY, on Behalf of Himself and All Other Taxpayers of the State of North Dakota, Plaintiff and Appellant,

v.

Grant TRENBEATH et al., Defendants and Respondents.

No. 8395.

Supreme Court of North Dakota.

Feb. 13, 1967.

Bosard, McCutcheon & Coyne, Minot, for plaintiff and appellant.

McGee, Van Sickle & Hankla, Minot, for Brynhild Haugland, Richard J. Backes, and Chester Fossum, defendants and respondents.

Paul M. Sand, First Asst. Atty. Gen., Bismarck, for rest of defendants and respondents.

TEIGEN, Chief Justice.

This appeal is from a summary judgment dismissing the plaintiff's action.

The plaintiff in a taxpayer's action seeks to recover for the benefit of the State of North Dakota from each of the legislators of the 39th Session of the Legislative Assembly of the State of North Dakota the sum of $770.00. This was the sum paid to each of them by the State pursuant to a part of the provisions of Chapter 340 of the Session Laws of 1965, and now appears as Section 54–03–20 of the pocket parts of the North Dakota Century Code. The plaintiff's claim is based upon one ground, to wit: that the italicized portion of Section 54–03–20, as hereinafter set forth, is unconstitutional as being in violation of Section 45 of the North Dakota Constitution.

Section 54–03–20 of the pocket parts, N. D.C.C., (Chapter 340, Laws of North Dakota 1965), reads as follows:

54–03–20. Allowance for Living Expenses of Members of Legislative Assembly.—Each member of the legislative assembly of the state of North Dakota shall be entitled to, and shall receive the sum of twelve hundred dollars as reimbursement for his living expenses, including meals, lodging and uncompensated travel, and other necessary expense during the legislative session *and thirty-five dollars for each month of the biennium for which he was elected for uncompensated expenses incurred in the execution of his public duties during the biennium and while the legislative assembly is not in session,* which total sum of two thousand forty dollars shall be payable as follows: One-half of said sum payable at the end of the thirtieth day of the session and the remaining one-half thereof to be paid at the close of the legislative session. Attendance at the biennial session of the legislative assembly by any member thereof shall be a conclusive presumption of the expenditure of such expense allowance for the purposes set forth in this section and shall be excluded from gross income for income tax purposes. Said sum shall be paid in the same manner as the regular per diem of the members of the legislative assembly is paid. The provisions of this section shall be retroactive to January 1, 1965. (Emphasis supplied.)

Section 45 of the Constitution of the State of North Dakota provides as follows:

Section 45. Each member of the legislative assembly shall receive as a compensation for his services for each session, five dollars per day, and ten cents for every mile of necessary travel in going to and returning from the place of the meeting of the legislative assembly, on the most usual route.

The defendants by their answer admit receipt of the money and in defense assert that the complaint fails to state a claim upon which relief can be granted. There are other affirmative defenses pleaded that are not pertinent to this decision.

Both parties moved for summary judgments. Both of the motions for summary judgment were based on the pleadings. No matters outside of the pleadings were

presented to or considered by the trial court. There is no issue as to any material fact, and therefore this is a proper case for summary judgment procedure, pursuant to Rule 56 of the North Dakota Rules of Civil Procedure.

It is the contention of the appellant that the italicized portion of Section 54–03–20, supra, is in violation of Section 45 of the North Dakota Constitution because neither the statutes nor the Constitution provide for any public duties to be performed by the members of the legislature during 22 months of the biennium while the legislative assembly is not in session except those who serve on the Legislative Research Committee and subcommittees, and the Audit and Fiscal Review Committee, and they are compensated for their services while serving on such committees pursuant to other statutes. He argues that there being no public duties to perform, the legislators cannot incur any expenses in the execution of public duties and therefore the provision of the statute in question providing that they shall be paid $35.00 per month for uncompensated expenses incurred in the execution of public duties is tantamount to compensation for their services during the legislative session and thus in excess of the limitation provided by Section 45 of the Constitution.

The plaintiff does not attack that portion of the statute (Section 54–03–20, supra) which provides that each member of the legislative assembly shall be entitled to and receive the sum of $1200.00 as reimbursement for his living expenses, including meals, lodging and uncompensated travel, and other necessary expense during the legislative session as being in violation of Section 45 of the Constitution.

█ Under our system of constitutional government, the powers of government are divided into three separate branches, the legislative (Article II of the Constitution), the executive (Article III of the Constitution), and the judicial (Article IV of the Constitution).

█ The legislative branch deliberates upon and decides the policies and principles to be adopted for the future and enacts them into law. The executive branch administers the law so enacted. The judicial branch construes the law, passes on its constitutionality, and determines, in accordance with the law, the rights and interests of the individual citizen.

This tripartite division of powers is a fundamental theory in State and Federal government. Under Section 25 of the State Constitution, the legislative power of this State is vested in the legislature, consisting of a Senate and a House of Representatives, and in the people through the initiative and the referendum.

█ Early in the history of this Court, it laid down the rule that:

In passing upon the constitutionality of any statute, there are certain elementary principles of which courts must ever be mindful. These principles render that certain which otherwise might be uncertain; that simple which otherwise might be complex; that safe which otherwise might be dangerous. We must remember that legislative power is primarily plenary, and that constitutions are not grants of, but restrictions upon, that power. Hence he who would challenge a legislative enactment must be able to specify the particular constitutional provision that deprived the legislature of the power to pass the enactment. We must remember that it is the duty of courts to reconcile statutes with the constitution when that can be done without doing violence to the language of either, and in all cases of doubt the doubt must be resolved in favor of the constitutionality of the statute. * * *

Martin v. Tyler, 4 N.D. 278, 60 N.W. 392, 25 L.R.A. 838.

This rule has been followed in many subsequent cases. State ex rel. Gaulke v. Turner, 37 N.D. 635, 164 N.W. 924; State v. First State Bank of Jud, 52 N.D. 231, 202

N.W. 391; Baird v. Burke County, 53 N.D. 140, 205 N.W. 17; Aubol v. Engeseth, 66 N.D. 63, 262 N.W. 338, 100 A.L.R. 853; State ex rel. Johnson v. Baker, 74 N.D. 244, 21 N.W.2d 355; Stark v. City of Jamestown, 76 N.D. 422, 37 N.W.2d 516; State ex rel. Rausch v. Amerada Petroleum Corporation, 78 N.D. 247, 49 N.W.2d 14; Kessler v. Thompson, N.D., 75 N.W.2d 172; Northwestern Bell Telephone Company v. Wentz, N.D., 103 N.W.2d 245; Convis v. State, N. D., 104 N.W.2d 1.

In Stark v. City of Jamestown, supra, this Court said:

When it is asserted that action which is authorized by a legislative enactment is forbidden by the constitution, we do not look in the constitution for a grant of power to the legislature to enact such law, we look only to ascertain if it inhibited the legislature from enacting the law.

Thus a statute is presumed to be constitutional, and in case of doubt as to its constitutionality the doubt must be resolved in favor of its validity. State ex rel. Johnson v. Baker, supra; Menz v. Coyle, N.D., 117 N.W.2d 290. Such presumption is conclusive unless the statute is clearly shown to contravene some provision of the State or Federal constitutions. Northwestern Improvement Company v. Morton County, 78 N.D. 29, 47 N.W.2d 543; Menz v. Coyle, supra. Section 89 of the State Constitution speaks to the same effect. It provides:

The supreme court shall consist of five judges, a majority of whom shall be necessary to form a quorum or pronounce a decision * * * provided, however, that in no case shall any legislative enactment or law * * * be declared unconstitutional unless at least four of the judges shall so decide.

Therefore we have said on considering the constitutionality of a statute every reasonable presumption in favor of its constitutionality prevails. Anderson v. Peterson,

78 N.D. 949, 54 N.W.2d 542; State ex rel. City of Minot v. Gronna, 79 N.D. 673, 59 N.W.2d 514; Menz v. Coyle, supra.

The courts will not declare a statute void unless its invalidity is, in the judgment of the court, beyond a reasonable doubt. Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849; Kessler v. Thompson, N.D., 75 N.W.2d 172; Menz v. Coyle, supra.

Because the State Constitution does not confer power on the legislature, but is a limitation on power and therefore the legislature may enact any law not expressly or impliedly forbidden by the Constitution of the State or prohibited by the Constitution of the United States, the legislature may in the exercise of its power appropriate and expend money for whatever purpose it pleases unless its action violates a limitation found, either expressly or impliedly, in the Constitution. Within these limits legislative action is not subject to control by the courts. Furthermore, in passing upon the validity of legislative action the courts must presume that such action is constitutional unless the contrary is clearly shown beyond a reasonable doubt. Therefore it is clear that we are not at liberty to strike down that part of the statute attacked in this case merely because we think that the legislature was unwise in adopting it or that the procedure adopted is susceptible to abuse, or for any other reason short of a violation of Section 45 of the Constitution. In State ex rel. Linde v. Taylor, 33 N.D. 76, 156 N.W. 561, L.R.A. 1918B, 156 Ann.Cases 1918A, p. 583, this Court held:

The wisdom, necessity, or expediency of legislation are matters for legislative, and not judicial, consideration.

And in the text of the North Dakota report, at page 87, 156 N.W. at page 565, we said:

The motives of the legislators cannot be inquired into in determining the constitutionality of a statute.

See also Federal Farm Mortgage Corporation v. Falk, 67 N.D. 154, 270 N.W. 885, 113 A.L.R. 724, Cert. Den. 302 U.S. 704, 58 S.Ct. 24, 82 L.Ed. 544; State v. Cromwell, 72 N.D. 565, 9 N.W.2d 914; Northern Pacific Ry. Co. v. Warner, 77 N.D. 721, 45 N.W.2d 196; Lindberg v. Benson, N.D., 70 N.W.2d 42.

In this case the constitutional challenge is a narrow one. It is limited to that part of the statute (Section 54–03–20, supra) which provides that each member of the legislative assembly of the State of North Dakota shall be entitled to " * * * thirty-five dollars for each month of the biennium for which he was elected for uncompensated expenses incurred in the execution of his public duties during the biennium and while the legislative assembly is not in session * * *." Plaintiff argues that a search of the laws of this State does not reveal that the legislators have any public duties to perform while the legislative assembly is not in session except those chosen to serve on the Legislative Research Committee and subcommittees, and the Audit and Fiscal Review Committee. He then points out that when legislators serve upon these committees during the time that the legislative assembly is not in session they are compensated pursuant to special statutes. He points to Section 54–35–10, N.D.C.C., which provides that the members of the committee and any subcommittee of the Legislative Research Committee shall be compensated at the rate of ten dollars per day and paid their actual expenses incurred in attending meetings and performing their official duties, and Section 54–35.1–05, N.D.C.C., pertaining to compensation of members of the Audit and Fiscal Review Committee, which provides that they shall be paid compensation for their services on the committee in the same manner and at the same rate as that provided for the members of the Legislative Research Committee. Plaintiff also calls to our attention Section 54–06–09, N.D.C.C., which makes provision for payment of mileage and travel expenses of state officers and employees, and con-

cludes there are no public duties imposed upon legislators during the biennium while the legislative assembly is not in session when such legislators will incur uncompensated expenses.

█ We find that Section 54–06–09, supra, is not applicable to legislators. Section 54–06–01, N.D.C.C., defines elected and appointed state officers for the purposes of Chapter 54–06 to include officials of the executive department of the State. It does not include members of the legislative or the judicial branch.

█ Article II of our Constitution provides that senators shall be elected for a term of four years (Section 27), and their terms shall be staggered (Section 30). It provides that representatives shall be elected for a term of two years (Section 33), and that the sessions of the legislative assembly shall be biennial (Section 55), except that extraordinary sessions may be convened by the governor (Article III, Section 75). Article II also provides that no regular session shall exceed sixty days, except in case of impeachment (Section 56). The only provision of the Constitution providing for compensation is found in Section 45, supra, which is limited to compensation for services for each session except the travel allowance of ten cents for every mile of necessary travel in going to and returning from the place where the legislative assembly meets, on the most usual route. Section 45 is limited to sessions of the legislative assembly, and makes no reference by implication or otherwise to the legislators' term of office while the legislative assembly is not in session. That part of Section 54–03–20, supra, under attack in this action is by its language specifically limited to uncompensated expenses incurred during the biennium and while the legislative assembly is not in session. The language of the constitutional provision and the statutes is implicitly clear and leaves no room for interpretation.

If we could take the view that the members of the legislature function only during

the period that the legislative assembly is in formal session, it would be possible to argue that no expense incurred between the sessions irrespective of the purpose for which it was incurred could be a legitimate legislative expense. It has been held by some courts upon a sine die adjournment of the legislature "all its functions as a legislative body cease." Fergus v. Russel, 270 Ill. 304, 110 N.E. 130. See also Dickinson v. Johnson, 117 Ark. 582, 176 S.W. 116, L.R.A.1915E, 496; Swing v. Riley, 13 Cal. 2d 513, 90 P.2d 313. However, it appears to be generally conceded that a legislature may create committees to function during the interim.

 The rule that the legislature ceases to exist upon adjournment sine die has been rejected in Oregon, State ex rel. Overhulse v. Appling, 226 Or. 575, 361 P.2d 86. We agree that it is proper to reject this rule in North Dakota also. We find this is made clear by our Constitution, which provides, as we have set forth above, that the sessions of the legislative assembly shall be biennial, that the regular session shall not exceed sixty days except in case of impeachment, but the terms of senators are set at four years, and the terms of the representatives set at two years. The governor has the constitutional power to convene the legislative assembly in special session. The Constitution also provides that the governor shall issue writs of election to fill such vacancies as may occur in the legislative assembly (Constitution, Section 44). A special session of the legislative assembly called pursuant to Section 75 is held to be a session of the legislative assembly. State ex rel. Langer v. Olson, 44 N.D. 614, 176 N.W. 528. Thus it is clear that the office of senator or representative continues as a public office after the adjournment of the regular session of the legislative assembly and continues for the term for which each was elected. Similar results have been obtained elsewhere. In re Davis, 58 Kan. 368, 49 P. 160; In re Opinion of Justices, 239 Mass. 603, 133 N.E. 452. There is nothing in our Consti-

tution which limits legislative expenditures during the interim between sessions. Expenditures of State funds during the interim have regularly been authorized since the creation of the Legislative Research Committee in 1945. Section 54–35–01, N.D.C.C. There has also been created the Legislative Audit and Fiscal Review Committee. Section 54–35.1–01, pocket supplement to N.D. C.C. Both of these committees consist of members of the legislature and carry out their duties during the interim and are compensated for their services and expenses as set forth earlier in this opinion.

 The functions of state government have grown and expanded greatly since statehood. The responsibilities of the legislators and the amount of work which they must accomplish in the limited 60-day session have also grown in amount and in complexity. We must assume that the necessity for these expenses was made the subject of a proper investigation by the legislature and constitutes an honest decision made with the best interests of the State in mind. The wisdom, necessity and expediency of the law are primarily matters for legislative rather than judicial consideration. State v. Cromwell, supra; State ex rel. Linde v. Taylor, 33 N.D. 76, 156 N.W. 561, L.R.A.1918B, 156, Ann. Cases 1918A, 583, Error Dism. 245 U.S. 627, 38 S.Ct. 60, 62 L.Ed. 518; Federal Farm Mortgage Corporation v. Falk, 67 N.D. 154, 270 N.W. 885, 113 A.L.R. 724, Cert. Den. 302 U.S. 704, 58 S.Ct. 24, 82 L. Ed. 544; Northern Pacific Ry. Co. v. Warner, 77 N.D. 721, 45 N.W.2d 196; City of Bismarck v. Hughes, 53 N.D. 838, 208 N.W. 711; Minot Special School District No. 1 v. Olsness, 53 N.D. 683, 208 N.W. 968, 45 A.L.R. 1337; State v. First State Bank of Jud, 52 N.D. 231, 202 N.W. 391; State ex rel Sathre v. Board of University & School Lands, 65 N.D. 687, 262 N.W. 60. However, we cannot disregard the constitutional guarantees, and whether a statute violates their provisions is a question for the courts. State v. Cromwell, supra; Northern Pacific Ry. Co.

v. Warner, supra. It is elementary that in construing a constitutional or statutory provision the words are to be given their plain, ordinary and commonly understood meaning. Bronson v. Johnson, 76 N.D. 122, 33 N.W.2d 819; Cowl v. Wentz, N.D., 107 N.W.2d 697. Section 1–02–05, N.D.C.C., provides that the letter of a statute is not to be disregarded under the pretext of pursuing its spirit. And Section 1–02–03, N.D.C.C., provides that words and phrases shall be construed according to their context, rules of grammar, and the approved use of the language.

■ Keeping the foregoing principles in mind, we find the statute is clear. It specifically provides for payment of "uncompensated expenses * * * while the legislative assembly is not in session, * * *" and clearly does not relate to the period covered by Section 45 of the Constitution which provides "compensation for his services for each session." The plaintiff argues that the words of the statute "incurred in the execution of his public duties" emasculate the statute because there are no public duties for a legislator to perform during the interim unless he is a member of the Legislative Research Committee or the Legislative Audit and Fiscal Review Committee for the reason that there are no other statutes providing duties for legislators during the interim. We do not agree. Section 54–03–20, supra, part of which is under consideration here, is of equal status with the statutes creating and setting forth the duties of the Legislative Research Committee and the Legislative Audit and Fiscal Review Committee, and if the legislature in its wisdom approved the statute providing for the payment of uncompensated expense incurred in the execution of their public duties during the interim, they must certainly have determined that they have public duties which they perform.

■ Under the familiar principle that the Constitution is a limitation and not a grant of power, it follows that the legislature, not being forbidden by Section 45 of the Constitution, possesses inherently the power to provide expense money for the performance of such public duties as the individual legislator performs during the interim. It is apparent from Section 54–03–20, supra, that the legislature has determined that legislators have public duties to perform during the interim between legislative sessions, that expenses are necessarily incurred in connection therewith, and that these expenses are to be reimbursed. If a legislator is to be knowledgeable and informed, as he must be, on matters concerning government and the public whom he serves as a public officer, he owes a duty to the State and his constituents to keep informed on matters of policy established by the laws enacted and policy to be established in the future by the enactment of new laws. The public duties of a legislator cannot be said to be limited to the sixty days while the legislative assembly meets or the period during which it meets in special session. If the people in adopting the Constitution so intended, it would have been a simple matter to have so provided.

Whether the expense allowance is excessive is dependent on the amount of actual expenses incurred by the respective legislators during the interim in the execution of their public duties. Undoubtedly it varies, dependent upon a number of factors such as the industriousness of the legislator, the economic conditions of his district, the controversies resulting from legislative policy established, the intricacies of matters of policy for future consideration, and many other factors too numerous to mention. However, the legislators in approving the legislation challenged in this action may be presumed to have made this question a subject of proper investigation. Their determination as to the facts cannot under any principle of constitutional law be disturbed by this Court unless the amount allowed is so plainly and palpably in excess of any amount of expenses which could possibly be incurred by them in the exercise of their public duties during the interim as to show evidence beyond reasonable doubt that it

was not to provide for payment of expenses during the interim but to increase compensation for their services during the session.

 It does not appear to us that the challenged portion of the statute on its face provides for the payment of an excessive amount, and we know of nothing of which we can take judicial notice that would make such a conclusion proper. The legislature has the power to investigate and make determination of facts in reviewing the propriety of a statute, and it may repeal or amend a statute within constitutional limitations.

 The legislators are sworn constitutional officers of the State. We will not presume that they will violate fundamental law or seek emoluments from the State which are improper. We must give effect to the obvious intent of the legislature, as expressed in the words of the statute, to reimburse legislators for uncompensated expense incurred in the execution of their public duties performed while the legislative assembly is not in session. We find it is a provision for the payment of a legislative expense and not personal expenses.

In State v. Tower, 185 Mo. 79, 84 S.W. 10, 68 L.R.A. 402, the Court in speaking of legislative power and discretion said:

> It had the power, and must be presumed to have inquired into the actual conditions * * *; and the discretion exercised by them within their conceded powers we have no power to control, unless it involves a violation of some right protected by the Constitution.

In State ex rel. Payne v. Reeves, 44 S.D. 568, 184 N.W. 993, that Court said:

> It is not for the court to inquire or determine whether a state of facts existed calling for the enactment of the legislation in question. That is for the exclusive consideration of the legislature. If under any possible state of facts the act would be constitutional and valid, the

court is bound to presume that such condition existed.

We affirm the district court's summary judgment of dismissal.

STRUTZ, ERICKSTAD, KNUDSON and PAULSON, JJ., concur.