**AMOCO OIL COMPANY, Petitioner and Appellant,**

v.

**JOB SERVICE NORTH DAKOTA, Edwin Mayer, William Bentley, Boyd Jaskoviak, et al., Respondents and Appellees.**

**Civ. No. 9943.**

Supreme Court of North Dakota.

Oct. 28, 1981.

Pearce, Anderson & Durick, Bismarck, and Doherty, Rumble & Butler, Minneapolis, Minn., for petitioner and appellant; argued by Stephen T. Refsell, Minneapolis, Minn.

Michael J. Wilma, Asst. Atty. Gen., Bismarck, for respondent and appellee Job Service North Dakota.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for individual respondents and appellees; argued by Albert A. Wolf, Bismarck.

SAND, Justice.

Opinion of the Court by Sand, Justice.

In this appeal we must determine if the appeal [request for review] from the appeals tribunal decision dated 3 Apr. 1980 to the bureau was timely. In resolving this issue we must also determine whether North Dakota Century Code § 52–06–10 or NDCC §§ 52–06–13 and 52–06–15 and their related positions apply to the facts of this case.

Members of a union went on a strike against their employer, Amoco Oil Company [Amoco], on 9 Jan 1980, and subsequently filed for unemployment compensation benefits. The bureau had not directed that the matter be by the appeals referee as permitted by NDCC § 52–06–10 and as a result the claims were heard by the claims examiner in the Job Insurance Division in the regular course. The claims examiner, on or about 22 Jan 1980 issued a determination denying the claims for benefits based on the provisions of subsection 4 of § 52–06–02, NDCC.

The claimants appealed to the appeals tribunal. After a hearing before an appeals tribunal consisting of the chief appeals referee,[1] the appeals tribunal, on 3 Apr 1980, reversed the decision of the claims examiner on the basis that "a stoppage of work" did not exist and that NDCC § 52–06–02 did not apply. Based on this decision, the claimants were entitled to benefits which were chargeable against Amoco's employment experience account. The appeals tribunal mailed a copy of the decision to Amoco and its attorneys on 3 Apr 1980. The decision also contained the following advice and notice:

"You have seven days from the mailing of this notice to your last known address in which to file a request for Bureau Review of that decision.

"Unless the request is filed on or before April 10, 1980, the decision will become

1. The appeals tribunal may consist of a "referee ... or a body composed of three members, one of whom shall be a referee." NDCC § 52–06–14.

final as provided in Section 52–06–10 of the North Dakota Century Code.

"A request for Bureau Review must be made in writing and filed at the nearest office of Job Service North Dakota or with the Appeal Tribunal of Job Service North Dakota, P. O. Box 1537, Bismarck, North Dakota 58505."

Amoco on 15 Apr 1980, filed a request for bureau review. The request was denied on the basis that it was untimely and that the decision of the appeals referee had become final. Amoco petitioned the district court to review the order denying the appeal to the bureau and to vacate the decision of the appeals referee dated 3 Apr. 1980.

After a hearing, the district court affirmed the bureau's order denying the request for bureau review on the basis that the request for review was untimely. Amoco appealed to this Court.

The appeal, involved here, is an intra-agency appeal filed on 16 Apr 1980 in which Amoco sought bureau review of the appeals referee decision dated 3 Apr 1980. We must determine if the request for review was timely. To determine if this was timely we need to examine the pertinent statutory provisions. NDCC § 52–06–10 provides as follows:

"Whenever any claim for benefits under the North Dakota Unemployment Compensation Law involves the application of the provisions of section 52–06–02, subsection 4, the examiner handling the claim, if so directed by the bureau, shall transmit such claim promptly to the appeals referee for the purpose of making a determination upon the issues involved under that section or upon such claim. The appeals referee shall make the determination on the claim after such investigation as he deems necessary and after affording the parties entitled to notice an opportunity for a fair hearing in accordance with the provisions of the North Dakota Unemployment Compensation Law with respect to hearing and determinations of the appeal tribunals. The parties shall be notified promptly of the determination, together with the reasons

therefor, in the event of the denial of the claim. Such determination shall be deemed to be the final decision on the claim, unless within seven days of the mailing of the notice to a party's last known address, or in the absence of such mailing, within ten days after the delivery of such notice, an appeal is filed with the bureau." [Underscoring ours.]

This statute contemplates that the appeals referee instead of the claims examiner conduct the hearing and make the determination, "if so directed by the bureau." The underscored material contemplates that the bureau may expedite the decision-making process in a labor dispute case and have the claim initially heard before the appeals referee. However, that process was not used in this case. Furthermore, the appeal under this section is to be filed "with the bureau," and not with the appeals referee.

In the instant case, the claim was initially filed with and heard by the examiner and not by the appeals referee and the decision of the examiner accordingly was appealed to the appeals referee or appeals tribunal rather than to the bureau.

■ The record does not reflect that the bureau directed the appeals referee to hear and determine the claims. If § 52–06–10 did not apply, then the advice given in connection with the decision of the appeals referee dated 3 Apr 1980 was erroneous as to the time period within which the appeal must be taken (seven days). Even if it applied, the advice as to where the appeal is to be filed was not consistent with the provisions of § 52–06–10.

Generally, NDCC §§ 52–06–13, 52–06–14, 52–06–15 and 52–06–16 apply whenever claims are heard and processed in a normal sequence before a claims examiner and appeals are taken to an appeals referee and from there to the bureau. Significantly, NDCC § 52–06–15 provides that the decision of the appeals tribunal "shall be final unless within twelve days after the date of mailing the notice thereof to the party's last known address, or in the absence of such mailing, within twelve days after the

delivery of such notice, further review is initiated pursuant to section 52–06–16, subsection 3." In addition, the provisions of NDCC § 52–06–19 provide that the bureau on its own motion, and within the time specified in § 52–06–15 may initiate a review of the decision of the appeal tribunal or may allow an appeal from such decision upon an application filed within such time by any party entitled to notice of such decision. The bureau, on its own, has not taken any such action.

On the basis of the record submitted to us, we conclude that the provisions of § 52–06–10 are not applicable to the instant situation. We therefore determine that the provisions of § 52–06–13 and the related provisions through § 52–06–19 apply.

These sections provide that the time within which the appeal must be filed is twelve days. In determining how the time is to be computed, we will take into account NDCC § 1–02–15, which, as is pertinent, in part provides:

> "The time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last is a holiday, and then it is also excluded."

Our Court, on a number of occasions, has construed § 1–02–15, but never involving the application to the time of appeal.[2] Under NDCC § 1–02–15 we start counting[3] the twelve days on the 4th of April, rather than on the 3rd. Beginning with the 4th of April the twelfth day falls on the 15th of April, and not the 16th. The notice of appeal was filed on the 16th day of April, which is the 13th day, whereas the statute requires that it be filed within twelve days.

Amoco contended that its request for review was timely because it was filed within twelve days of its receipt of the appeals tribunal's decision by mail. The decision was received by Amoco on 7 Apr 1980.

Section 52–06–15, NDCC, requires a request for review to be filed "within twelve days *after the date of mailing* the notice" [emphasis added].

■ Amoco asserts that the proper interpretation of the "date of mailing" is the date the mailing was received by them. We disagree.

The primary purpose of statutory construction is to ascertain the intent of the Legislature. *State v. Moore*, 286 N.W.2d 274 (N.D.1979); *Hughes v. State Farm Mutual Automobile Insurance Co.*, 236 N.W.2d 870 (N.D.1975). A statute must be considered as a whole with a view toward arriving at the intent of the Legislature. *Apple Creek Township v. City of Bismarck*, 271 N.W.2d 583 (N.D.1978); *Horst v. Guy*, 219 N.W.2d 153 (N.D.1974). The Legislature's intent in enacting a statute must first be sought from the language of the statute. *Apple Creek Township v. City of Bismarck, supra.*

In interpreting a statute, words are to be given their plain, ordinary, and commonly understood meaning; and consideration should be given to the ordinary sense of statutory words, the context in which they are used, and the purpose which prompted their enactment. NDCC § 1–02–02; *Weber v. State Farm Mutual Automobile Insurance Co.*, 284 N.W.2d 299 (N.D.1979).

If a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute. NDCC § 1–02–05; *Barnes County Education Association v. Barnes County Special Education Board*, 276 N.W.2d 247 (N.D.1979).

In this instance, the term "date of mailing" is unambiguous and clear and its meaning cannot, within these rules of statutory interpretation, be expanded to mean date of receipt.

Amoco also contended that pursuant to Rule 81(a) of the North Dakota Rules of Civil Procedures, Rules 6(a) and 6(e) are

---

**2.** Cases can be found in the annotations to § 1–02–15 of the North Dakota Century Code.

**3.** As to computing time, including or excluding the first and last days, see 98 A.L.R.2d Annot. beginning on page 1331.

applicable. These rules, in essence, provide that if service is made by mail three days are to be added. However, Amoco misinterprets the provisions of Rule 1, NDRCivP, which provides:

"These rules govern the procedure in district courts in all suits of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in Rule 81..."

We are not aware of any rule or case law which provides that the rules of civil procedure apply to proceedings within an agency or intra-agency appeals as distinguished from appeals from the decision of an agency to the district court. We have held that the court-adopted rules apply to appeals from an administrative agency to the district court, and for that matter, appeals from the district court to the Supreme Court; but no case has been called to our attention and our research does not reflect a decision of this Court which has held that the Court-adopted rules of procedure apply to intra-agency appeals and procedures.

The rules that may have application are contained in the administrative regulations adopted pursuant to §§ 28–32–02, 28–32–02.1 and 28–32–03, and set out in the Administrative Code, Ch. 27–03–06, first stage appeals, and Ch. 27–03–07, second stage appeals. These administrative rules and regulations provide for a twelve-day period within which the appeal must be filed, but not for a ten-day period (7 + 3). Also, administrative rule 27–03–07–01(2) provides that the bureau on its own motion may initiate a review of the decision of an appeal tribunal. However, a sua sponte motion is not limited by a time frame as it is by statute. In such instances the rule must be deemed subordinate to the statute. Be that as it may, a sua sponte motion was not exercised.

The cases to which Amoco has referred in support of its position that the time should not be strictly adhered to all involved appeals from an administrative agency to the court, as distinguished from an appeal from one section or echelon to another within the agency—an intra-agency appeal.

Amoco also makes reference to *Gerhardt v. Fleck*, 251 N.W.2d 764 (N.D.1977), wherein the Court summarized cases which construed appellate rules. However, those cases do not construe the jurisdictional time period within which the appeal must be taken and do not apply where the appeal is within the agency itself, as distinguished from an appeal to a Court.

We also note that § 52–06–16 provides:

"The division may reconsider a determination of a claim whenever it finds:

1. That an error in computation or identity has occurred in connection therewith; or

2. That wages of the claimant pertinent to such determination but not considered in connection therewith have been newly discovered; or

3. That benefits have been allowed or denied or the amount of benefits fixed on the basis of a misrepresentation of facts. No such determination shall be made after one year from the day of the original determination, except that a reconsidered determination involving a finding that benefits have been allowed or denied or the amount of benefits fixed on the basis of nondisclosure or misrepresentations of fact may be made within two years from the date of determination. Notice of any such redetermination shall be given promptly to the parties entitled to the notice or original determination, and in the manner prescribed in section 52–06–12."

At one time, the term "division" was defined by statute to mean the unemployment compensation division of the workmen's compensation bureau. NDRC § 52–01–01(7). In 1965 this section was amended and defined "division" to mean the unemployment compensation division of the employment security bureau. Ch. 333 S.L. 1965. This definition was repealed by Ch. 391, § 26, of the 1973 Session Laws.[4] At

4. The legislative history reflects NDCC § 52–01–01(7) defining "division" was repealed because it was in conflict with NDCC § 52–02–01, which, at the time, provided there were two

the moment, we have no statutory definition as to what is meant by "division." However, we can readily assume that the term "division" as used here actually means the bureau as defined by NDCC § 52–01–01(6) to mean "job service North Dakota bureau." Be that as it may, the record does not disclose that the Job Service North Dakota bureau, or any division of it, initiated any such action.

■ Amoco also contended that the bureau's refusal to hear its appeal was an unconstitutional denial of due process under the North Dakota and United States Constitutions. Amoco conceded that the state has the power to regulate business and alleviate problems related to unemployment; however, it contended that the procedural system through which the power is exercised must be reasonable and appropriate to the purpose the system is established to fulfill. See, *State v. Cromwell*, 72 N.D. 565, 9 N.W.2d 914 (1943). Based on this, Amoco asserted that the procedural system in this instance was "extremely confusing, as well as arbitrary, capricious and unreasonable."

We note that Amoco received the appeals tribunal's decision on 7 Apr 1980 which was within the time period for appeals. Furthermore, there was a notice that an appeal must be taken before 10 Apr 1980. Amoco had notice and an opportunity to be heard before the expiration of the time for appeal. The "confusion," if any, that existed was the result of the attorney's actions, see *infra* footnote 5, in not processing the appeal. The untimely appeal was not a result of a denial of due process.

Nor do we believe the procedural system is arbitrary, capricious and unreasonable. We have no doubt that the state has an interest in processing claims for unemployment benefits and to reach a final resolution on those matters as quickly as possible to ease the burden of involuntary unemployment. As such, the time limitations for appeal are reasonable, as well as the provisions to expedite the procedure in labor dispute cases.

Amoco also contended that the time for appeal should have been extended on the basis of "excusable neglect" similarly as provided for in Rule 4, NDRAppP.[5] However, we have already concluded that the rules of procedure as adopted by this Court do not apply to intra-agency appeals; consequently the provisions of Rule 4, NDRAppP, do not apply. No statute, administrative rule or regulation has been brought to our attention, nor has our research disclosed any, that provides for an extension of time for an interagency appeal on grounds of excusable neglect. Neither has this Court adopted such rule and we deem it inappropriate to announce such rule by an opinion without the usual procedures of notice, opportunity for hearing, etc. Neither are we implying that this Court has this authority, nor are we deciding the issue here. In the absence of such statute, rule or regulation we must apply the time period for appeal as set out in the statute.

In summary, the time within which an appeal must be taken is jurisdictional. *Cottle v. Kranz*, 231 N.W.2d 777 (N.D.1975), and cases and authorities cited therein. We are not aware of any reason why this concept does not apply to intra-agency appeals. The time within which an appeal must be taken should not be confused with the time within which an appeal must be perfected or the time within which certain papers, etc., are to be filed.

divisions, the unemployment compensation division and the employment service division. NDCC § 52–02–01 was amended by S.L.1979, Ch. 522, § 2, which created the Job Service North Dakota Bureau and authorized the executive director of Job Service to establish separate divisions as he may deem advisable for efficient administration.

5. The grounds for excusable neglect primarily rest upon the grounds that the attorneys representing Amoco discussed briefly the appeal but erroneously assumed the other attorney would file the appeal, and by the time each found out that the other had not filed the appeal the time had elapsed. No explanation was made what role, if any, the Bismarck attorney had in this matter, but during oral argument the attorneys stated that no fault was attributed to the Bismarck attorney. No evidence was presented directly or indirectly that the time allowed within which the appeal had to be filed was not adequate to permit Amoco to file the appeal.

The record discloses that Amoco received the decision of the appeals referee dated 3 Apr 1980 in sufficient time to file an application for review with the bureau on or before 15 April, which would have been within the 12-day period. But Amoco did not file the appeal until the 16th day of April, 1980. We must, therefore, conclude that the appeal was untimely, and accordingly we affirm the judgment of the district court.[6]

ERICKSTAD, C. J., and VANDE WALLE and PAULSON, JJ., concur.

PEDERSON, Justice, dissenting.

Although I agree with nearly all that is said in the opinion authored by Justice Sand, I do not agree with the result. We have often used language such as "necessary to accomplish justice" [e. g., *Kuecks v. Cowell*, 97 N.W.2d 849, 855 (N.D.1959)] and "to avoid ludicrous and absurd results" [e. g., *Skoog v. City of Grand Forks*, 301 N.W.2d 404, 407 (N.D.1981)] as legal principles upon which cases are decided.

If there is some theory upon which to uphold an administrative determination that striking workers should be paid under North Dakota unemployment compensation laws, I would be most anxious to learn of it. Otherwise, the decision of Job Service, which appears on its face to be absurd, should be set aside in spite of the mismanagement of Amoco's counsel.

---

**6.** Our conclusion herein should not be considered as tacitly or implicitly supporting the decision of the appeals referee dated 3 Apr 1980.